CHAD A. READLER
   Acting Assistant Attorney General
WILLIAM E. FITZPATRICK
   Acting United States Attorney
ANTHONY J. COPPOLINO
   Deputy Branch Director
ANDREW E. CARMICHAEL
   Trial Attorney
   United States Department of Justice
   Civil Division, Federal Programs Branch
   20 Massachusetts Ave., N.W.
   Washington, DC 20530
   Tel: (202) 514-3346
   Email: Andrew.e.carmichael@usdoj.gov
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ———————————————— )<br>**ELIZABETH KYLE-LABELL,** )<br>*on behalf of herself and all others similarly situated,* )<br>      )<br>    **Plaintiff,** )<br>      )<br>    **v.** )<br>      )<br>**SELECTIVE SERVICE SYSTEM AND** )<br>**DONALD M. BENTON,** Director of )<br>Selective Service System, *in his official capacity,* )<br>      )<br>    **Defendants.** )<br>———————————————— ) | HON. ESTHER SALAS<br><br>Civ Action No.<br>2:15-cv-05193-ES-JAD | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

I.      The Military Selective Service Act ....................................................... 3

II.     Current Registration Process ............................................................... 4

III.    The National Commission on Military, National, and Public Service ................ 6

IV.     Current Proceedings ............................................................................. 7

V.      Applicable Standards ......................................................................... 10

ARGUMENT ................................................................................................................ 11

I.      Plaintiff Does Not Have Article III Standing ..................................... 11

II.     Plaintiff Fails to Allege A Present Injury .......................................... 12

III.    Plaintiff Fails to Allege A Stigmatic Injury ...................................... 14

IV.     Plaintiff Fails to Allege A Future Injury ........................................... 19

CONCLUSION ............................................................................................................. 21

## TABLE OF AUTHORITIES

## CASES

*Schwartz v. Brodsky,*
   265 F. Supp. 2d 130 (D. Mass. 2003) ...................................................... 13, 14

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
   508 U.S. 656 (1993) ........................................................................................ 16

*Saenz v. Roe,*
   526 U.S. 489 (1999) ........................................................................................ 16

*Hassan v. City of New York,*
   804 F.3d 277 (3d Cir. 2015) .................................................................. 15, 16, 17

*Alamo v. Clay,*
   137 F.3d 1366 (D.C. Cir. 1998) ..................................................................... 15

*Allen v. Wright,*
   468 U.S. 737 (1984) ............................................................................... 2, 14, 15

*Biszko v. RIHT Fin. Corp.,*
   758 F.2d 769 (1st Cir. 1985) .......................................................................... 15

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ................................................................................ 2, 17, 19

*Diamond v. Charles,*
   476 U.S. 54 (1986) ......................................................................................... 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) ........................................................................................ 11

*Gould Elecs. Inc. v. U.S,*
   220 F.3d 169 (3d Cir. 2000) ........................................................................... 10

*Heckler v. Mathews,*
   465 U.S. 728 (1984) .................................................................................. 15, 16

*Kerchner v. Obama,*
   612 F.3d 204 (3d Cir. 2010) ........................................................................... 18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ............................................................................. 10

*Lance v. Coffman*,
  549 U.S. 437 (2007) ............................................................................. 18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................ 11, 12

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ............................................................................. 11

*Miss. Univ. for Women v. Hogan*,
  458 U.S. 718 (1982) ............................................................................. 16

*NAACP v. Horne*,
  CV 13-01079, 2013 WL 5519514 (D. Ariz. Oct. 3, 2013) ........................... 15

*Purpura v. Sebelius*,
  Civil Action No. 10-04814, 2011 WL 1547768 (D.N.J. Apr. 21, 2011)................. 12

*Raines v. Byrd*,
  521 U.S. 811 (1997) .......................................................................... 2, 11

*Rostker v. Goldberg*,
  453 U.S. 57 (1981) ......................................................................3, 8, 9, 11

*Sinochem Int'l Co. v. Malay. Int'l Shipping*,
  549 U.S. 422 (2007) ............................................................................. 10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .......................................................................... 11

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................. 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*,
  454 U.S. 464 (1982) ............................................................................. 18

*Warren Gen. Hosp. v. Amgen* Inc.,
  Civil Action No. 09-4935, 2010 WL 2326254 (D.N.J. June 7, 2010),
  *aff'd*, 643 F.3d 77 (3d Cir. 2011) ......................................................... 14

**RULES**

Federal Rule of Civil Procedure 12 .............................................................................11, 13

**STATUTES**

Military Selective Service Act,
    50 U.S.C. § 3801, *et seq.* .................................................................................. 1, 3

50 U.S.C. § 3802(a) ..................................................................................................... 3

National Defense Authorization Act for Fiscal Year 2017,
    Pub. L. No. 114-328, 130 Stat. 2000 (2016) ........................................6, 7, 20

## INTRODUCTION

The Constitution vests Congress and the Executive with broad discretion over military affairs, particularly with respect to the regulation and composition of the armed forces.  Pursuant to that authority, Congress enacted the Military Selective Service Act ("MSSA"), 50 U.S.C. § 3801, *et seq*, as a method to conscript mass numbers of civilian men into the military in the event of a national emergency requiring mobilization beyond the capabilities of the all-volunteer force.  The MSSA requires civilian men between the ages of 18 and 26 to register with the Selective Service System ("SSS") and imposes certain penalties such as loss of eligibility for federal or state jobs or education benefits on men who have failed to register.

Plaintiff in this action is an 18-year-old female challenging the MSSA's male-only registration requirements.  Although Plaintiff herself is not required to register with the SSS, she has asked this Court to declare the MSSA unconstitutional and enjoin Defendants from registering males, require females to register, or make registration voluntary for both sexes.

Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.  Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing "cases or controversies."  The case or controversy limitation requires Plaintiff to establish that she has standing to sue by demonstrating that she has suffered a concrete, personal injury that will be remedied if the court rules in her favor.  Where, as here, a plaintiff seeks a decision as to the constitutionality of an action taken by a co-equal

1

branch of government, judicial scrutiny of standing is "especially rigorous." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

Because Plaintiff cannot demonstrate that she has suffered a legally cognizable injury she cannot meet this rigorous standing inquiry.  Here, Plaintiff does not allege that the MSSA requires her to do anything.  To the contrary, Plaintiff's complaint is that the MSSA does *not* require her to register with the SSS.  But she does not connect her inability to register with any actual harm.  She does not allege that she will be prevented from receiving any particular benefit because she is unable to register or that her inability to register with the SSS will hinder her ability to serve in the armed services. Indeed, she remains free to seek enlistment in the armed services and to apply for an open combat position.

Instead, Plaintiff appears to rely on a theory of stigmatic harm, but fails to claim that this alleged stigmatization actually affects her in any way.  Without connecting these potential stigmatic harms to any injuries that she herself has suffered, such alleged harms cannot be sufficient injury for purposes of Article III.  *See Allen v. Wright*, 468 U.S. 737, 755-56 (1984) (when the injury asserted is "stigmatic," the requirement of personal injury takes on heightened importance).

Nor does she allege any threaten harms that are "certainly impending" and adequate to constitute standing for future injury.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Instead, Plaintiff appears to rely only on a vague assertion that she is "bann[ed] . . . from the pool of potential combat soldiers," Am. Compl. (ECF No. 26)

¶ 65.  In addition to being clearly contradicted by her admitted ability to voluntarily join the armed forces, any such injury relies on the assumption that mass mobilization is imminent and thus is too speculative to meet Article III standing requirements.

In short, Plaintiff's challenge raises a general policy grievance, not a particularized injury present, stigmatic or future.    Accordingly, Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

### I.    The Military Selective Service Act

The Military Selective Service Act ("MSSA") first enacted as the Selective Service Act of 1948, establishes the Selective Service System ("SSS") as an independent federal agency, responsible for delivering appropriately qualified civilian men for induction into the Armed Forces of the United States, as authorized by Congress.  50 USC § 3801, *et seq*.  The MSSA requires "every male citizen of the United States, and every other male person residing in the United States, who . . . is between the ages of eighteen and twenty-six, to present himself for and submit to registration[.]"  50 U.S.C. § 3802(a).

Following the creation of the all-volunteer force in 1973, the Selective Service System temporarily became inactive in 1975 when President Ford discontinued draft registration.  *See Rostker v. Goldberg*, 453 U.S. 57, 59-60 (1981).  In response to the Soviet Union's invasion of Afghanistan, and at the request of President Carter, Congress reactivated the registration process in 1980.  *See id* at 60.  Unlike in previous registration regulations, however, men were not required to undergo immediate classification and

3

evaluation for fitness to serve in the military.  *See* Department of Defense Report on the Purpose and Utility of a Registration System for Military Selective Service, Ex. A at 2.

## II.    Current Registration Process

Although the all-volunteer force—comprised of Active Duty, Reserve, and National Guard personnel numbering approximately 2.1 million—has met all military requirements since its creation in 1973, the potential for another large scale war requiring mass mobilization still exists.  Thus, every Administration since 1980 has made the conscious decision to maintain national registration for selective service as a tool through which Congress and the President can provide additional manpower to the Armed Forces.  Ex. A at 3.

Currently the MSSA requires registration by most male citizens and residents of the United States who are at least 18 years of age but not yet 26.  A man must register within 30 days of his 18th birthday and update his registration within 10 days of a change in address.  Ex. A at 3.  Individuals are not permitted to register beyond their 26th birthday.  *Id.*  Under current law, women may serve voluntarily in the U.S. Armed Forces, including service in direct ground combat units[1], but are not, and never have been, required to register with the SSS.  *Id.* at 14.

---

[1] On December 3, 2015, Defense Secretary Ash Carter announced that all military occupations and positions would now be open to women, without exception.  Ex. A at 15.

4

The SSS processes more than 2.3 million new registrations annually. *Id.* at 3. Most registration is accomplished on-line through the SSS website and automatically via electronic data sharing arrangements with other federal and state agencies that administer benefits for which selective service registration is a prerequisite. *Id* at 3-4. Registration also may be accomplished using the Interactive Voice Response system at the SSS National Call Center and by paper forms available from the U.S. Postal Service. *Id.* The SSS engages with U.S. Embassies and consulates around the world in an effort to ensure that U.S. nationals living abroad are aware of registration requirements and approximately 40,000 registrations annually are from foreign addresses. *Id.* Men who fail to register may be subject to criminal penalties, loss of eligibility for federal or state jobs and education benefits, and denial of a security clearance. *Id.* Documented or undocumented immigrants who fail to register may not be able to obtain United States citizenship. *Id.*

In peacetime, the database is used primarily to verify the registration of males who apply for federal or state employment or education benefits. *Id.* at 5. Because the peacetime authority of the SSS does not extend to the classification or examination of registrants, all of those registered would generally be considered to be available for service. *Id.* at 4.

Should a crisis occur that requires more troops than the all-volunteer force can supply, a draft may be initiated only after Congress passes, and the President signs, enabling legislation. *Id.* at 6. Following authorizing legislation, the SSS and its

components would be required to significantly expand to meet mass conscription requirements. Individual registrants could then be reclassified at that time or determined unfit. *Id* at 4*; see also id* at 16 (citing recruiting study estimates that only 29 percent of today's youth qualify for entry into the military, for a variety of educational, medical, criminal justice and other reasons).

## III. The National Commission on Military, National, and Public Service

On December 23, 2016, the National Defense Authorization Act for Fiscal Year 2017 ("FY17 NDAA") was signed into law. Pub. L. No. 114-328, 130 Stat. 2000 (2016). Sections 551-557 of the FY17 NDAA authorized the creation of the National Commission on Military, National, and Public Service ("the Commission") to review the military selective service process. *See* Pub. L. No. 114-328 §§ 551-557, ECF No. 57-3. The stated scope of the Commission's review includes:

1) "the need for a military selective service process, including the continuing need for a mechanism to draft large numbers of replacement combat troops;" and

2) "the feasibility and advisability of modifying the military selective service process in order to obtain for military, national, and public service individuals with skills (such as medical, dental, and nursing skills, language skills, cyber skills, and science, technology, engineering, and mathematics (STEM) skills) for which the Nation has a critical need, without regard to age or sex[.]" Pub. L. No. 114-328 § 551(b).

6

Sections 551-557 of the FY17 NDAA create specific requirements for the President, federal agencies, and the Commission itself, and timelines to complete those requirements.  Section 552 required the Secretary of Defense to submit to the Committees on Armed Services of the Senate and the House of Representatives and to the Commission, a report "on the current and future need for a centralized registration system under the [MSSA]…[and on] expanding registration to include women[.]"  Pub. L. No. 114-328 § 552(a)(1) & (b)(1)(C).  That report was submitted on July 13, 2017 and is attached to Defendants' motion as Exhibit A.  The Commission has 30 months from its establishment date to complete its review of the selective service system and report its recommendations to Congress and the President.  Pub. L. No. 114-328 § 555(e)(1).

## IV.   Current Proceedings

Plaintiff[2] in this action is an 18-year-old female challenging the requirement of the MSSA that only men between the ages of 18 and 26 must register with the SSS.  In this challenge, Plaintiff seeks to represent a class of "all present and future female, U.S. citizens who are prevented from registering for the draft at any time from 30 days before their 18th birthday to the day before their 26th birthday and every other female person within that age grouping who is residing or who will reside in the United States," subject

---

[2] Monica Patricia Pinto withdrew as Plaintiff on February 6, 2016.  ECF No. 44.

to certain narrow exceptions.  Am. Compl. ¶ 26.

According to the complaint, Plaintiff tried to register with the SSS but was unable to do so solely because of her sex.  *See id.* ¶¶ 5, 11.  Plaintiff alleges that by "requiring only males and not females to register . . . and prohibiting females from registering," the MSSA "discriminates against both sexes" in violation of the equal protection and substantive due process provisions of the Fifth Amendment.  *Id.* ¶¶ 2, 19.  Plaintiff seeks both declaratory and injunctive relief, asking the Court to declare the MSSA unconstitutional and enjoin Defendants from registering males, require females to register, or make registration voluntary for both sexes.  *Id.* ¶¶ 13, 14.

On November 23, 2015, Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 33) arguing that Plaintiff lacks Article III standing, that her claims are not ripe, and that *Rostker v. Goldberg*, 453 U.S. 57 (1981) (finding the MSSA does not violate equal protection) remains binding precedent.  In *Rostker*, the Supreme Court considered whether the MSSA's male-only registration requirement violated the equal protection component of the Fifth Amendment.  In light of the substantial deference owed to Congress, the Supreme Court concluded that exempting women from the registration requirement did not violate the Fifth Amendment. "Congress did not act unthinkingly or reflexively" in choosing to exempt women from registration, the Court explained; rather, the question "not only received considerable national attention and was the subject of wide-ranging public debate, but also was extensively considered by Congress in hearings, floor debate, and in committee."  *Id.* at 72-73.  Moreover,

exempting women from the registration requirement was not based on an invidious gender classification, "but rather realistically reflects the fact that the sexes are not similarly situated" for purposes of a draft or registration for a draft. *Id.* at 78-79. Because Congress had determined that the purpose of registration "was to prepare for a draft of combat troops," and women "as a group, . . . are not eligible for combat," the Court concluded that "[t]he exemption of women from registration is not only sufficiently but also closely related to Congress' purpose in authorizing registration." *Id.* at 76-79. Therefore, the *Rostker* Court found that the MSSA passed constitutional muster. Plaintiff contends that *Rostker* is no longer binding on this Court on the theory that the rescission of the prohibition on women serving in direct ground combat positions alters the factual underpinnings of the *Rostker* decision. *See, e.g.,* ECF No. 41 at 9-10.

On June 29, 2016, the Court terminated Defendants' pending motion and ordered supplemental submissions regarding recent Congressional activity related to the MSSA and the SSS. ECF No. 48. On December 21, 2016, the parties submitted a Joint Status Report informing the Court of the recent Congressional activities involving the MSSA including the creation of a Commission to study the efficacy of the SSS and the possible expansion of registration requirements to females. ECF No. 57.

Plaintiff subsequently filed a Motion to Continue the Proceedings, seeking to resume the litigation. ECF No. 58-1. Defendant responded asserting that if the Court wished to proceed in the litigation the first step would be consideration of a renewed

motion to dismiss but, in the alternative, the Court could enter a limited stay pending the completion of the Commission's review.  ECF No. 61.

On July 27, 2017, the Court granted Plaintiff's Motion to Continue the Proceedings and ordered that Defendants may renew their motion to dismiss on or before August 25, 2017, on the issue of standing only.  ECF No. 67.

## V.    Applicable Standards

Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  When a defendant raises an issue of subject matter jurisdiction under Rule 12(b)(1), the court must resolve the jurisdictional issue before proceeding to the merits of the plaintiff's claims.  *See Sinochem Int'l Co. v. Malay. Int'l Shipping*, 549 U.S. 422, 430-31 (2007).

In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court is guided by the principle that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Thus, a court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears, and the plaintiff bears the burden of establishing that such jurisdiction exists. The court's review under Rule 12(b)(1) is not restricted to the pleadings; rather, the court may review extrinsic evidence to address any factual issues that affect jurisdiction. *Gould Elecs. Inc. v. U.S*, 220 F.3d 169, 176 (3d Cir. 2000).

<u>ARGUMENT</u>

## I.   Plaintiff Does Not Have Article III Standing

Article III of the Constitution limits federal-court jurisdiction to "'Cases' and 'Controversies.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" and limits who may "maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992))."

Where, as here, a plaintiff seeks a decision as to the constitutionality of an action taken by a co-equal branch of government, judicial scrutiny of standing is "especially rigorous." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). This is so because, consistent with the bedrock principle of separation of powers, judging the constitutionality of executive or congressional action is "the gravest and most delicate duty that [courts are] called upon to perform." *Rostker*, 453 U.S. at 64. Because Plaintiff cannot demonstrate that she has suffered a legally cognizable injury she cannot meet the "injury in fact" requirement to establish standing.

11

## II.     Plaintiff Fails to Allege A Present Injury

The first prong of the standing inquiry, "injury in fact," requires (1) an "invasion of a legally protected interest" that is (2) "concrete and particularized" and (3) "actual or imminent." *Lujan*, 504 U.S. at 560.  Establishment of an injury in fact "is a hard floor of Article III jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

Here, Plaintiff's claims must be dismissed because she does not carry her burden to show that she has suffered a concrete and particularized injury caused by Defendants' actions.  In her amended complaint Plaintiff does not offer a single "specific, concrete fact[]" to show that the MSSA — or Defendants' administration of the Act — has caused, or will cause, her personal, particularized, and cognizable injuries.  *See Purpura v. Sebelius*, Civil Action No. 10-04814, 2011 WL 1547768, at *4 (D.N.J. Apr. 21, 2011) ("[F]or an injury-in-fact to be particularized, it must 'affect the plaintiff in a personal and individual way.'").  The MSSA does not harm Plaintiff by requiring her to do anything, nor deprive her of any opportunities in life.  Because she is not required to register she cannot be subject to criminal penalties, a loss of eligibility for federal or state jobs and education benefits, or the denial of a security clearance for failing to do so.  *See* Ex. A. at 4.  And Plaintiff alleges no such deprivation in her complaint.

Nor does registration allow Plaintiff to receive any additional benefits that would not otherwise be available to her.  Contrary to her representations, Plaintiff is not "bann[ed] . . . from the pool of potential combat soldiers." Am. Compl. ¶ 65.  Plaintiff remains free to enlist in the military (now or in the event the draft is reinstated), as she

12

has previously conceded, and thereby show that she, like male citizens, are "ready and willing to protect their country." ECF No. 41 at 2. In fact, her opportunities to serve have only broadened since the filing of this lawsuit with the Defense Department's decision to open all military specialties to females, without exception.[3] Further, Plaintiff's complaint does not allege that if she did enlist, her exemption from the registration requirement would hinder her career opportunities, curtail her chances of entering a newly opened combat position, or place her at any comparative disadvantage. As such, she has not alleged an injury sufficient to establish Article III standing.

In *Schwartz v. Brodsky*, the Court considered a female Plaintiff's standing to challenge the MSSA's male-only registration requirements and came to the same conclusion. 265 F. Supp. 2d 130 (D. Mass. 2003). In that case, four males and one female brought a challenge to the MSSA claiming, as Plaintiff contends here, that the factual underpinnings of *Rostker* had been removed. *See id.* at 132. The Court dismissed the claims of all plaintiffs for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), but found that the female plaintiff's claims should also be dismissed for lack of standing because individuals "who have never been registered with the Selective Service System and are not under any compulsion to register in the near

---

[3]   *See*   https://www.defense.gov/News/Article/Article/632536/carter-opens-all-military-occupations-positions-to-women/ last visited Aug. 25, 2017 ("Defense Secretary Ash Carter announced today [December 3, 2015] that beginning in January 2016, all military occupations and positions will be open to women, without exception.")

future" suffer no "distinct and palpable harm nor imminent threat of concrete harm . . . sufficient to establish standing." *Id.* at 131 n.1.

## III. Plaintiff Fails to Allege A Stigmatic Injury

Equally defective is Plaintiff's assertion of some unspecified "noneconomic injur[y]" caused by "[d]iscrimination itself." Am. Compl. ¶ 69. Plaintiff cannot establish Article III standing by relying on conclusory allegations of the harms of discrimination, which allegedly affect "all present and future" 18 to 26 year-old female U.S. citizens and residents. *Id.* ¶ 26. Such general allegations of harm, without reference to any particular incidents or injuries that Plaintiff herself has experienced, fail to satisfy Article III's rigid requirements. *See Allen*, 468 U.S. at 750, 755-56 (emphasizing that when the injury asserted is a "stigmatic injury," the requirement of personal injury takes on heightened importance); *Warren Gen. Hosp. v. Amgen Inc.*, Civil Action No. 09-4935, 2010 WL 2326254, at *3 n.5 (D.N.J. June 7, 2010) ("It is well-established that bringing a lawsuit as a class action does not dispense with the requirement that a named plaintiff must itself have standing to sue."), *aff'd*, 643 F.3d 77 (3d Cir. 2011).

Nor may Plaintiff establish standing by relying on some unspecified "stigmatic" or psychological harm. Stigmatic injury inflicted by allegedly unconstitutional discrimination "accords a basis for standing only to those persons who are personally denied equal treatment," *Allen*, 468 U.S. at 755, a standard that requires that the

14

differential treatment have some real, adverse consequence for the plaintiff.[4]  *See id.* at

737, 755 (plaintiffs lacked standing to challenge tax exemption granted to school when

injury was exemption's allegedly stigmatizing effect); *Alamo v. Clay*, 137 F.3d 1366, 1370

(D.C. Cir. 1998) (assertions of stigma insufficient when plaintiffs fail to allege "any

detrimental consequences" from the stigma).  The lack of stigma here is further

supported by the fact that the military welcomes and recruits women to enlist.  *See* Ex.

A at 17-18.

    The Third Circuit's recent decision in *Hassan v. City of New York* does not compel

a different result.  804 F.3d 277 (3d Cir. 2015).  The plaintiffs in *Hassan* claimed that

they were targets of a police surveillance program solely because of their Muslim faith.

Reversing the district court and concluding that the plaintiffs had alleged a cognizable

injury in fact, the court explained that "the indignity of being singled out by a

---

[4] For example, the plaintiff in *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) alleged
that the Social Security Act denied him the same Social Security benefits that were
afforded similarly-situated women, in violation of his equal protection rights.  The
plaintiff's injury at the hands of the agency was concrete: "as a nondependent man, he
receive[d] fewer benefits than he would if he were a similarly situated woman."  *Id.* at
738.  Although *Heckler* "does contain broad language concerning the stigmatizing
injuries suffered by a denial of equal protection" — to which Plaintiff here points —
this language "appears in response to the defendant's argument that the plaintiff in
*Heckler* lacked standing because one possible outcome of his suit would have been to
strike down the discriminatory benefits provision entirely, denying benefits to everyone
including the plaintiff.  The Court explained that such a possibility did not deprive the
plaintiff of standing because he was in fact 'personally denied equal treatment' in the
benefits awards."  *NAACP v. Horne*, CV 13-01079, 2013 WL 5519514, at *5 (D. Ariz.
Oct. 3, 2013); *See also Biszko v. RIHT Fin. Corp.*, 758 F.2d 769, 773 (1st Cir. 1985) (*Heckler*
"clearly [did] not dispense with the injury requirement" of Article III).

government *for special burdens* on the basis of one's religious calling, is enough to get in the courthouse door."   *Id.* at 289 (internal citations omitted; emphasis added).   That decision is inapposite here, where Plaintiff has alleged no "burden" at all, but instead challenges her exemption from registration requirement.[5]

In particular, in contrast to the Plaintiff's threadbare assertions of injury here, the Third Circuit concluded that the plaintiffs in *Hassan* had adequately alleged concrete and particularized harms.   In *Hassan*, the Court of Appeals credited plaintiffs' allegations that the police had broadly infiltrated their communities, collecting photographs and videos, recording license plate numbers, and posing as members of community

---

[5] In so holding, *Hassan* cites *Heckler* and other cases for the principle that "[u]nequal treatment is 'a type of personal injury [that] ha[s] long [been] recognized as judicially cognizable," and "virtually every circuit court has reaffirmed — as has the Supreme Court — that a 'discriminatory classification is itself a penalty,' and thus qualifies as an actual injury for standing purposes, where a citizen's right to equal treatment is at stake." 804 F.3d at 289-90 (internal citations omitted).   In fact, however, the authority on which this standing analysis relies involved circumstances where alleged discriminatory treatment was accompanied by, or resulted in, an actual burden imposed on the plaintiff in a personal and concrete way.   As noted above, *Heckler* involved the loss of Social Security benefits on the basis of gender. 465 U.S. at 738.   *Saenz v. Roe* involved the denial of welfare benefits to individuals who failed to meet state residency requirements. 526 U.S. 489 (1999).   *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville* involved an ordinance that imposed barriers to obtaining city contracts on non-minority contractors, and the Court held simply that, in order to establish standing, the plaintiffs need not allege they would have obtained the contracts but for the barrier. 508 U.S. 656 (1993).   *See Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982) (rejecting a policy that barred men from enrolling in a state nursing school).   No such personal and concrete injuries that result from the MSSA are (or can be) alleged by Plaintiff here, and none of the foregoing authority holds that Article III standing can exist absent some personal, concrete injury resulting from the allegedly discriminatory statute.

organizations.  *See id.* at 285-86.  The plaintiffs further alleged that the surveillance program generated several "widely publicized" reports suggesting a link between their communities and criminal and terrorist activities and that each plaintiff had either been named in or belonged to a mosque or association named in one of those reports.  *Id.* at 287.  Indeed, two mosques that had been named in NYPD reports alleged that the surveillance program led to a decline in attendance at religious services.  *Id.* at 288. Finally, certain plaintiffs alleged that the program had caused them financial harm by decreasing the value of their homes, scaring customers away from their businesses, and interfering with the organizational plaintiffs' fundraising efforts.  *Id.*[6]

In contrast to these allegations of concrete and particularized injuries, Plaintiff here alleges — in a scant three paragraphs of the complaint — simply that "[a]ll the members of the female class are injured to the extent described by Justice Brennan" in *Heckler*; that is, they are "stigmatiz[ed] . . . as 'innately inferior.'"  Am. Compl. ¶ 69. Such a nebulous assertion of injury is entirely insufficient to confer Article III standing. Unlike the plaintiffs in *Hassan*, Plaintiff here does not allege *any* injurious actions taken directly against her by the Government for discriminatory reasons or that the alleged stigmatization she attributes to the MSSA has impacted her in any way by reducing her

---

[6] Insofar as the court in *Hassan* concluded that the plaintiffs had standing based in part on allegations of self-imposed reactions to the fear of surveillance, *see* 804 F.3d at 287-88, that aspect of the standing analysis appears to conflict with the Supreme Court's decision in *Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

opportunities in life or affecting her daily activities.  Even if, as Plaintiff alleges, the MSSA "sends a message to all U.S. citizens and institutions that women are not capable of shouldering the responsibilities of citizenship to the same extent as men," Am. Compl. ¶ 68, this "message" cannot stand in the place of a legally-cognizable injury, particularly where Plaintiff has failed to allege that it has impacted her in any way. Having failed to allege that the MSSA has any effect — measurable or otherwise — on her daily activities or opportunities in life, Plaintiff has failed to carry her burden to establish Article III standing.

Absent a particularized, concrete injury, Plaintiff's complaint is akin to a policy grievance, unsuitable for resolution in federal court.  *See Lance v. Coffman*, 549 U.S. 437, 440 (2007) ("To have standing, we observed, a plaintiff must have more than 'a general interest common to all members of the public.'").  In the absence of some particularized cognizable harm to Plaintiff herself, the alleged injury is not a matter of individual concern, but rather a generalized and public one.  Such "abstract questions of wide public significance" are "most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 475 (1982); *Kerchner v. Obama*, 612 F.3d 204, 208 (3d Cir. 2010) (same).

Likewise, "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." *Valley Forge*, 454 U.S. at 483.  Simply put, Article III "requires more than a desire to vindicate value

18

interests." *Diamond v. Charles*, 476 U.S. 54, 66 (1986). Thus, although Plaintiff may disagree with the current state of statutory law that exempts women from draft registration, absent some concrete personal injury, that disagreement cannot create Article III standing. *See id.* at 62 ("The presence of a disagreement, however sharp and acrimonious . . . is insufficient by itself to meet Art. III's requirements."); *but see* Am. Compl. ¶ 12 ("Both plaintiffs will periodically continue to try to register because they correctly believe it is their right and duty as citizens.").

## IV.   Plaintiff Fails to Allege A Future Injury

As far as Plaintiff's complaint can be read to assert a threatened or future injury any such injury is far too speculative to confer standing. The Supreme Court has "repeatedly reiterated," a threatened injury must be "certainly impending" to constitute injury in fact, and "'allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. The mere possibility that a draft might be reinstated at some future point and that Plaintiff might miss the opportunity to be drafted does not meet this standard.

As an initial matter, Plaintiff has not alleged that, were a draft to occur, she would be disadvantaged or injured in any meaningful Article III sense by enlisting in the military by choice rather than by compulsion. That a draft has not been used in 44 years and "DoD currently has no operational plans that envision mobilization at a level that would require conscription[]" underscores the speculative nature of any assertion that Plaintiff will be affected — let alone injured — by the MSSA. Ex. A. at 2.

Further, any alleged future injury was made even more speculative by the creation, by Congress, of a Commission to study the efficacy of the SSS and possible expansion of registration requirements to females. *See, e.g.,* Pub. L. No. 114-328 §§ 555(c)(2)(A) & 553(b) (tasking the Commission with reviewing whether the SSS is still needed, it is still the most efficient mechanism to mobilize large numbers of troops, and if it should be open to all citizens and residents regardless of sex). Notably, further study of that issue directed by Congress has already begun, with the issuance of a report by the Department of Defense pursuant to the NDAA. *See* Ex. A. Upon completing its review, the Commission could determine that there is no longer a need for the SSS; there is no longer a need for anyone to register for the SSS (the deep standby option that was previously used between 1975 and 1980)[7]; or registration requirements should be made without regard to sex. If Congress then acts on these recommendations any alleged future injury would fail to exist even if a draft were reinstated. In any event, where the policy-making process of the political branches is underway and the future of the SSS is currently under debate, the alleged threat of future injury is speculative at best. *See* Ex. A at 17-20 (discussing potential benefits of expanding draft registration to women); *see also id.* at 25-30 (discussing feasibility of alternatives to current mass mobilization draft registration system).

---

[7] The deep standby posture is further explained at Selective Service System, *Background of Selective Service,* https://www.sss.gov/About/History-And-Records/Background-Of-Selective-Service (last visited Aug. 25, 2017).

In sum, at its core, Plaintiff's allegations raise a general policy objection, not a particularized injury present, stigmatic or future, and recourse for her policy objections lies with the political process, not in federal court.[8]

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.

Dated: August 25, 2017                    Respectfully submitted,

                                          CHAD A. READLER
                                          Acting Assistant Attorney General

                                          WILLIAM E. FITZPATRICK
                                          Acting United States Attorney

                                          ANTHONY J. COPPOLINO
                                          Deputy Branch Director

                                          /s/ Andrew E. Carmichael
                                          ANDREW E. CARMICHAEL
                                          Trial Attorney
                                          VA Bar No. 76578
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue, N.W., Rm.7218
                                          Washington, D.C. 20530
                                          Tel: (202) 514-3346
                                          Fax: (202) 305 2685
                                          Email: andrew.e.carmichael@usdoj.gov

                                          Counsel for Defendants

---

[8] The Court directed that the instant motion address solely the issue of standing. Accordingly, Defendants have not reiterated, in this filing, its other grounds for dismissal in prior motions, including under the ripeness doctrine and for failure to state a claim upon which relief can be granted.  See ECF No. 33 at 18-30.