**BSF** | BOIES
SCHILLER
FLEXNER

SABINA MARIELLA
Tel.: (212) 446-2300
E-mail: smariella@bsfllp.com

June 28, 2024

**VIA ECF**

Honorable Katharine S. Hayden
United States District Court
District of New Jersey
50 Walnut Street
Newark, New Jersey 07101

> Re:     *Kyle-Labell v. Selective Service System et al.*,
>         **Case No. 2:15-cv-05193- KSH-JSA**

Dear Judge Hayden:

We represent Plaintiff Elizabeth Kyle-Labell in the above-captioned case. We write in response to the Court's order that the parties submit letters addressing the effect on this matter of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). ECF No. 147.

In *TransUnion*, the plaintiff brought a class action against TransUnion LLC, a credit reporting agency, pursuant to the Fair Credit Reporting Act ("FCRA"). The FCRA creates a cause of action for consumers to sue and recover damages for certain violations of the statute. The plaintiff asserted, on his own behalf and on behalf of the class, that TransUnion had failed to use reasonable procedures to ensure the accuracy of their credit reports, which might have been provided to third parties with misleading information. Only a small number of the class members, however, had their misleading credit reports sent to third parties during the class period. The trial court nevertheless concluded that all class members had Article III standing on each of the statutory claims, even if no misleading information had been provided to any third party, and each class member was awarded damages at trial. *TransUnion*, 594 U.S at 413.

The Supreme Court ultimately held that (1) under Article III, only plaintiffs who have been concretely harmed by a statutory violation may sue a private defendant over that violation in federal court and (2) only class members whose credit reports were disseminated to third parties suffered a concrete injury in fact, as required for Article III standing. Importantly, *TransUnion* was decided after trial and after thousands of class members, who the plaintiff stipulated had suffered no injury for the statutory violation, were awarded damages. *Id*. at 413.

*TransUnion* has no effect on Plaintiff's pending class certification motion (or this case more generally) for several, independent reasons.

> I.     *TransUnion* **Does Not Affect Plaintiff's Pending Class Certification Motion.**

First, *TransUnion* was not an appeal of class certification, and the Supreme Court expressly declined to address "the distinct question whether every class member must demonstrate standing *before a court certifies a class*." 594 U.S. 431 n.4 (emphasis added). *TransUnion* thus did not abrogate well settled law in the Third Circuit that, for purposes of class certification, "putative class members need not establish Article III standing. Instead, the 'cases or controversies'

requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015); *see also Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018) (at the class certification stage, the "standing inquiry focuses solely on the class representative(s)"); *Shelton v. Bledsoe*, 775 F.3d 554, 564 (3d Cir. 2015) ("[T]here is no requirement that every class member suffer an injury before a class is certifiable under Rule 23."). And, for purposes of class certification pursuant to Rule 23(b)(2)—the rule pursuant to which Plaintiff seeks class certification—the "focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a 'colorable' claim." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 299 (3d Cir. 2011).[1]

In fact, the Third Circuit has explicitly held that *TransUnion* did not abrogate *Neale* and *Mielo* because *TransUnion* "held only that individual standing was required for a class member to obtain damages" and reaffirmed that "it is not necessary for each member to prove his or her standing for the class action to be justiciable." *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 154 (3d Cir. 2023). Even before *Huber*, courts within the Third Circuit continued to follow *Neale* and *Mielo* after *TransUnion*. As one court within the Third Circuit explained:

> Notwithstanding Butela's standing to sue, MCM argues that certification should be denied because Butela has not shown that each putative class member has standing. MCM cites to the Supreme Court's decision in *TransUnion LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 210 L.Ed.2d 568 (2021), for the proposition that "all class members must have Article III standing for a class action to be proper." However, contrary to MCM's assertion that *TransUnion* "raised the bar", that case considered the question of Article III standing at a very different stage of the litigation—namely, after trial. The Supreme Court thus held that "[e]very class member must have Article III standing in order to recover individual damages" and stated that evidence of such must be adduced at trial. But the Supreme Court expressly declined to address "the distinct question whether every class member must demonstrate standing before a court certifies a class." As such, *TransUnion* did not abrogate the Court of Appeals for the Third Circuit's prior decisions in *Neale* and *Mielo*. Those cases, which are binding on this Court, provide that "unnamed, putative class members need not establish Article III standing" at the class certification stage. Rather, at that early stage, the case-or-controversy requirement of Article III is satisfied "so

---

[1]    Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citation omitted).

long as a class representative has standing." Accordingly, since Butela has standing, the Court need not consider the standing of each putative class member at this time.

*Butela v. Midland Credit Mgmt. Inc*., 341 F.R.D. 581, 588 (W.D. Pa. 2022) (internal citations omitted); *see also Sines v. Darling Ingredients Inc*., No. CV 19-19121, 2023 WL 3841741, at *3 n.3 (D.N.J. June 6, 2023) ("Importantly, putative class members need not establish Article III standing. Darling argues that this holding "was abrogated by [*TransUnion*] and is wrong. However, in [*TransUnion*], the Supreme Court held that every class member must establish standing to recover *after* class certification; it did not 'address the distinct question [of] whether every class member must demonstrate standing *before* a court certifies a class.") (emphasis in original) (quoting *TransUnion*, 594 U.S. 431 n.4); *In re Lincoln Nat'l COI Litig*., 620 F.Supp.3d 230, 263 (E.D. Pa. 2022) (rejecting same argument, citing *Butela*).

There can be no serious dispute that Plaintiff, the proposed class representative, has standing—as this Court already conclusively found in denying Defendants' motion to dismiss for lack of standing.[2] ECF No. 72. And given that the class otherwise satisfies the requirements of Rule 23 (as set out in Plaintiff's class certification motion), *TransUnion* has no effect on this matter at this stage of the proceedings.

## II.    *TransUnion* Did Not Involve a Constitutional Violation.

Second, *TransUnion* separately has no bearing on this matter because that case involved a statutory violation of the FCRA, not a violation of the United States Constitution. Here, Plaintiff's remaining claim challenges the constitutionality of the male-only draft requirement pursuant to the Equal Protection Clause. As *TransUnion* itself made clear, "intangible harms," including "harms specified by the Constitution itself"—such as violations of the Equal Protection Clause —can be concrete for purposes of Article III standing. 594 U.S. at 425. The Supreme Court has also previously explained that "[w]hen the suit is one challenging the legality of government action or inaction" and "the plaintiff is himself an object of the action (or forgone action) at issue . . . there is ordinarily little question that the action or inaction has caused him injury . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).

Here, the class members are all the object of the Military Selective Service Act's discriminatory classification precluding women from registering for the draft. As this Court recognized in denying Defendants' motion to dismiss, "the Third Circuit has stated that 'virtually every circuit court has reaffirmed—as has the Supreme Court—that a discriminatory classification is itself a penalty and thus qualifies as an actual injury for standing purposes, where a citizen's right to equal treatment is at stake.'" ECF No. 72 at 8–9 (quoting *Hassan v. City of New York*, 804 F.3d 277, 289-90 (3d Cir. 2015) (cleaned up)); *see also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 657 (1993) ("The 'injury in fact' . . . is the denial of equal treatment . . . ."); *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984) ("[D]iscrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing

---

[2]    Plaintiff's own standing should be assessed as of the date she filed her motion for class certification. *See, e.g.*, *Holmes v. Pension Plan of Bethlehem Steel Corp*., 213 F.3d 124, 135 (3d Cir. 2000); *Lusardi v. Xerox Corp*., 975 F.2d 964, 982 (3d Cir. 1992).

members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group."); *Hassan*, 804 F.3d at 289 ("Unequal treatment is a type of personal injury that has long been recognized as judicially cognizable." (cleaned up)).

### III. *TransUnion* Did Not Involve a Constitutional Violation.

Third, *TransUnion*'s holding was limited to when plaintiffs can sue private defendants *for damages*—backward-looking relief—for statutory violations. Plaintiff does not seek damages on behalf of herself or the class. Instead, she brings a putative class action seeking forward-looking declaratory and injunctive relief pursuant to Rule 23(b)(2). The standing requirements for forward-looking relief and backward-looking relief are entirely different: "When a plaintiff seeks retrospective (backward-looking) relief in the form of money damages, they can establish standing through evidence of a past injury. But when a plaintiff seeks prospective (forward-looking) relief in the form of an injunction or a declaratory judgment, they must show that they are likely to suffer future injury." *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 317–18 (3d Cir. 2022). Accordingly, *TransUnion* did not alter the requirements of standing for declaratory and injunctive relief, or for Rule 23(b)(2) classes generally.

### IV. Defendants' Mootness Argument Does Not Affect Plaintiff's Pending Class Certification Motion.

In response to the Court's directive to submit letters addressing the effect of *TransUnion* on this case, Defendants also raise the argument that Plaintiff's claims are moot because she turned 26. ECF No. 148 at 2. This argument is in no way responsive to the Court's order, and Plaintiff only learned of Defendants' intent to raise this issue when they filed their letter on the docket approximately an hour and a half prior to the deadline set by the Court. Plaintiff has therefore had limited time to prepare a response to this argument.

In any event, Defendants' mootness argument, even if it were correct, has no bearing on Plaintiff's pending class certification motion. Even if Plaintiff's claims were moot, she would still be permitted to litigate the pending class certification motion under binding Third Circuit precedent because, under Defendants' own theory, her claims were not moot at the time she filed her class certification motion in 2019. *See, e.g.*, *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 305–07 (3d Cir. 2016) (noting that "class claims can breathe life into an otherwise moot case" and permit an individual plaintiff "to continue seeking class certification"); *Holmes*, 213 F.3d at 135–36 ("So long as a class representative has a live claim at the time he moves for class certification, neither a pending motion nor a certified class action need be dismissed if his individual claim subsequently becomes moot."); *Lusardi*, 975 F.2d at 982 ("Just as appellate review may relate back to an adverse class certification decision made when plaintiffs had a live claim, so district court review of a pending certification motion relates back to its filing, if plaintiff had a live claim at that time.").

Further, even if Plaintiff's claims were mooted by her age, she would not be automatically disqualified from serving as a class representative "as long as she seeks class certification on behalf of others whose claims are not moot." *Wilson v. Sullivan*, 709 F. Supp. 1351, 1356 (D.N.J. 1989); *see also Gayle*, 12 F.4th at 237 ("Although the named plaintiffs' individual claims 'were long ago

moot,' . . . the certified class has standing to litigate its claims and the named plaintiffs may continue to represent the class so long as they meet the requirements for Rule 23."); *Wilkerson v. Bowen*, 828 F.2d 117, 121 (3d Cir. 1987) ("It would seem to us that the principle espoused in *Geraghty* is applicable whether the particular claim of the proposed class plaintiff is resolved while a class certification motion is pending in the district court (as in the present case) or while an appeal from denial of a class certification motion is pending in the court of appeals (as in *Geraghty*). In neither event is the plaintiff automatically disqualified from being a class representative and the question still must be decided whether, all other factors being considered, the plaintiff can fairly and adequately represent the class and meet the other requirements of Fed. R. Civ. P. 23."); *Conover v. Montemuro*, 477 F.2d 1073 (3d Cir. 1972) (in class action challenging intake procedures of state juvenile court, completion of the juvenile proceedings against the named plaintiffs did not render the action moot, because even if the named plaintiffs' own claims had become moot, numerous class members remained whose claims were not moot).

Pursuant to this authority, for purposes of addressing Plaintiff's class certification motion, mootness and Plaintiff's Article III standing relate back to the filing of the pending class certification motion.

Respectfully,

/s/ Sabina Mariella
Sabina Mariella